## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

**COMMONWEALTH OF PENNSYLVANIA,**
**By JOSH SHAPIRO, ATTORNEY GENERAL,**

      **Plaintiff,**

**v.**

**FLUENT, LLC d/b/a CAC; AMERICAN**
**PRIZE CENTER, LLC; DELIVER**
**TECHNOLOGY, LLC; REWARDZONE USA,**
**LLC; and  SAMPLES & SAVINGS USA, LLC,**

      **Defendants.**

**CIVIL DIVISION**   2:22-cv-1551

**COMPLAINT FOR PERMANENT**
**INJUNCTION, CIVIL PENALTIES,**
**AND OTHER EQUITABLE RELIEF**

Filed on Behalf of Plaintiff:

COMMONWEALTH OF
PENNSYLVANIA, JOSH SHAPIRO
ATTORNEY GENERAL

Counsel of Record for this Party:

Amy L. Schulman
Senior Deputy Attorney General
P.A. I.D. No. 80888
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA  15222
(412) 565-3523

Kevin R. Green
Deputy Attorney General
P.A. I.D. No. 321643
1251 Waterfront Place
Mezzanine Level
Pittsburgh, PA  15222
(412) 235-9078

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

**COMMONWEALTH OF PENNSYLVANIA,**
**By JOSH SHAPIRO, ATTORNEY GENERAL,**                    **CIVIL DIVISION**

        **Plaintiff,**

**v.**

**FLUENT, LLC d/b/a CAC; AMERICAN**
**PRIZE CENTER, LLC; DELIVER**
**TECHNOLOGY, LLC; REWARDZONE USA,**
**LLC; and  SAMPLES & SAVINGS USA, LLC,**

        **Defendants.**


**COMPLAINT FOR PERMANENT INJUNCTION, CIVIL PENALTIES,**
**AND OTHER EQUITABLE RELIEF**

      **AND NOW**, comes the Commonwealth of Pennsylvania, by Josh Shapiro, Attorney

General ("Commonwealth"), and brings this action against Fluent LLC d/b/a CAC, American

Prize Center, LLC, Deliver Technology, LLC, RewardZone USA, LLC and Samples & Savings

USA, LLC (collectively "Defendants" or "Fluent") and alleges the following:

**INTRODUCTION**

      1.    The Commonwealth brings this action pursuant to the *Telemarketing and*

*Consumer Fraud and Abuse Prevention Act* ("Telemarketing Act"), 15 U.S.C. §§ 6101-6108,

and Pennsylvania's *Unfair Trade Practices and Consumer Protection Law,* 73 P.S. § 201-1, *et*

*seq.* (Consumer Protection Law), to obtain permanent injunctive relief, civil penalties and other

equitable relief for Defendants' acts and practices in violation of Pennsylvania's *Telemarketer*

*Registration Act*, 73 P.S. § 2241, *et seq.* ("TRA"), the Federal Trade Commission's Trade

Regulation Rule entitled *"Telemarketing Sales Rule"* ("TSR"), 16 C.F.R. Part 310, as well as the Consumer Protection Law.

2.      Section 201-4 of the Consumer Protection Law authorizes the Attorney General to bring an action in the name of the Commonwealth of Pennsylvania to restrain by temporary and/or permanent injunction unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce declared unlawful by Section 201-3 of the Consumer Protection Law. 73 P.S. §§ 201-3 and 201-4.

3.      Further, whenever an attorney general of any State has reason to believe that the interests of the residents of that State have been or are being threatened or adversely affected because any person has engaged or is engaging in a pattern or practice of telemarketing which violates any rule under Section 6102 of Telemarketing Act, the State, as parens patriae, may bring a civil action on behalf of its residents in an appropriate district court of the United States to enjoin such telemarketing, to enforce compliance with such rule of the Commission, to obtain damages, restitution, or other compensation on behalf of residents of such State, or to obtain such further and other relief as the court may deem appropriate. 15 U.S.C. § 6103(a).

4.      At all times relevant hereto, and as alleged in more fully herein, Defendants engaged in trade and commerce by advertising and marketing promotional offers and opportunities to Pennsylvania consumers, such as gift cards and free samples, in order to acquire consumer data for purposes of lead generation.

5.      In connection with these business operations, the Commonwealth has reason to believe that Defendants have used methods, acts or practices declared unlawful by the TSR, the TRA and the Consumer Protection Law.

6.      The unfair methods, acts and practices complained of herein have been willfully used by Defendants.

7.      The Commonwealth believes that citizens of the Commonwealth are suffering and will continue to suffer harm unless the acts and practices complained of herein are permanently enjoined.

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), and 1355, as well as 15 U.S.C. §§ 6103(a).

9.      This Court has supplemental jurisdiction over the remaining claims under 28 U.S.C. § 1367.

10.     Venue is proper in this district because pursuant to 15 U.S.C. § 6103(e) and 28 U.S.C. §§ 1391(b)(2) and 1395(a).

## PARTIES

11.     Plaintiff is the Commonwealth of Pennsylvania, Office of Attorney General, with offices located at 1251 Waterfront Place, Mezzanine Level, Pittsburgh, Pennsylvania 15222; and 15th Floor, Strawberry Square, Harrisburg, Pennsylvania 17120.

12.     Defendant Fluent, LLC is a Delaware limited liability company with a principal place of business located at 300 Vesey Street, 9th Floor New York, New York 10282.

13.     Defendant Fluent, LLC does business as CAC, an Assumed Name, registered with the New York State Department of State, Division of Corporations.

14.     Defendant American Prize Center, LLC is a New York limited liability company with a principal place of business located at 300 Vesey Street, 9th Floor New York, New York 10282 and is a subsidiary of Fluent, LLC.

15.     Defendant Deliver Technology, LLC is a Delaware limited liability company with a principal place of business located at 300 Vesey Street, 9th Floor New York, New York 10282.

16.     Defendant RewardZone USA, LLC is a New York limited liability company with a principal place of business located at 300 Vesey Street, 9th Floor New York, New York 10282 and is a subsidiary of Fluent, LLC.

17.     Defendant Samples & Savings USA, LLC is a Delaware limited liability company with a principal place of business located at 300 Vesey Street, 9th Floor New York, New York 10282 and is a subsidiary of Fluent, LLC.

18.     Defendants have operated as a common enterprise while engaging in the deceptive, unfair, and unlawful acts and practices and other violations of law alleged below. Defendants have conducted the business practices described below through an interrelated network of companies that have common ownership, common officers, common office locations and use common services. Because Defendants have operated as a common enterprise, each of them is liable for the acts and practices alleged below.

**DEFENDANTS' BUSINESS PRACTICES**

19.     Defendants advertise, offer for sale and sell lead generating services to third party businesses and organizations, which Defendants refer to as their "Marketing Partners."

20.     Lead generation involves collecting personal information, including telephone numbers, from consumers and then selling that information to third parties who want to use the leads to generate business.

21.     Many of Defendants' Marketing Partners are companies that advertise and sell subscription services, streaming services, insurance, utility services and on-line education programs.

22.     Defendants operate dozens of websites designed for lead generating, including but not limited to:

      a.  www.consumersrvycnter.com;
      b.  www.surveysandpromotions.com;
      c.  http://restaurantpromotionsusa.com;
      d.  www.electronicproductzone.com;
      e.  www.webpromotionsusa.com;
      f.  www.consumerproductsusa.com;
      g.  https://signup.sweepstakesgroup.com;
      h.  http://www.mymonthlysweeps.com; and
      i.  https://www.sweepstakesamonth.com.

23.     In order to drive consumer traffic to their websites, Defendants used the internet and social media to advertise promotional offerings, such as gift cards to popular retailers and digital payments through mobile apps, as depicted below and as attached as "Exhibit 1."



24.      Defendants advertise these promotional offerings to consumers through social media, internet advertising on third party websites, email solicitations and search engine optimization.

25.      Once consumers are directed to Defendants' websites, images of the promotional offerings are prominently featured to entice consumers to continue to engage with Defendants on their websites.

26.      Defendants' websites use various methods to ask consumers to enter their personal contact information in a registration form, including name, address and primary phone number, as shown below and as attached as "Exhibit 2."

27.     Located below the registration form is a fine print disclosure that states:

> By checking the box below I consent to receive
> phone sales calls and text messages – Msg and data
> rates apply – from Verde Energy, CAC and our
> Marketing Partners on the landline or mobile
> number I provided even if I am on a federal or State
> do not call registry.  I understand these calls may be
> generated using an autodialer and may contain pre-
> recorded messages and that consenting is not
> required to participate in the offers promoted.
>
> For SMS message campaigns: Text STOP to stop
> and HELP for help.  Msg & data rates may apply.
> Periodic messages; max. 30/month.

28.     The term "Marketing Partners" is hyperlinked and upon clicking this hyperlink a pop up screen appears and identifies the companies and organizations that the consumer is purportedly consenting to be contacted by, as described in the fine print disclosure.

29.     Consumers are not required to click on or view the hyperlinked list of Marketing Partners in order to provide purported consent to be contacted for purposes of telemarketing.

30.     At times, the hyperlinked list of Marketing Partners identified hundreds of companies and organizations for whom Defendants sought consumers' purported consent to be contacted for purposes of telemarketing, as shown below and as attached as "Exhibit 3."



Entities Disclosed Behind the Marketing Partner Hyperlink







31.     Below the fine print disclosure, Defendants ask consumers to check a box, which states "I Confirm" followed by another fine print disclosure stating "that all of my information is accurate and consent to be called and texted as provided above."

32.     At the bottom of the page is a large green button that states "Continue."

33.     The fine print disclosure seeking purported consumer consent to be contacted, described above, is notably obscured by the image of the promotional offer and the larger and more prominent text used to encourage the consumers to check the box and hit "Continue."

34.     After consumers submit their contact information, consumers are prompted through several sequential webpages to answer survey questions and view marketing offers.

35.     These survey questions are designed to gather more information about the consumers for purposes of lead generation.

36.     In connection with some of the survey questions, Defendants seek consumers' purported consent to receive telemarketing calls from certain Marketing Partners, as shown below and as attached as "Exhibit 4."



37.     These particular survey questions fail to clearly and conspicuously disclose to consumers that if they select a certain answer to the survey question, they are in turn purportedly consenting to be contacted for purposes of telemarketing by one of Defendants' Marketing Partners.

38.     From 2018 through 2021, more than 4.2 million Pennsylvania consumers registered their personal contact information with Defendants' websites.

11

39.     Defendants' websites mislead or have the tendency and/or capacity to mislead consumers to provide their purported consent to be contacted by Defendants' Marketing Partners for purposes of telemarketing.

40.     Defendants' websites mislead or have the tendency and/or capacity to mislead consumers into believing they are confirming their contact information in order to register to receive a promotional offering, when in fact they are entering their contact information for purposes of lead generation and the consumer's purported consent to be contacted for purposes of telemarketing.

41.     These promotional offerings fail to include clear and conspicuous disclosures advising consumers that by registering their contact information with Defendants they are purportedly consenting to be contacted by multiple third party sellers, whose products and services are wholly unrelated to the promotional offerings.

42.     These promotional offerings are only available to consumers if they participate in a certain number of advertised deals that Defendants promote on their websites, such as accepting trial offers to certain products and services.

43.     Defendants' lack of transparency and deceptive marketing practices have denied consumers the opportunity to make informed decisions about sharing their personal contact information for purposes of telemarketing.

44.     Defendants' acts and practices, as described herein, have resulted in millions of telemarketing calls being placed to Pennsylvania consumers by or on behalf of Defendants' Marketing Partners.

45.     As a result of Defendants' substantial assistance or support, many of these telemarketing calls were illegally trafficked by or on behalf of Defendants' Marketing Partners, as alleged in more detail below.

## THE TELEMARKETING SALES RULE

46.     Congress directed the Federal Trade Commission ("FTC") to adopt the original TSR in 1995, extensively amended it in 2003, and amended certain provisions thereafter. 16 C.F.R. Part 310.

47.     Among other things, the 2003 amendments to the TSR established a do-not-call registry ("Registry"), maintained by the Commission, of consumers who do not wish to receive certain types of telemarketing calls. Consumers can register their telephone numbers on the Registry without charge either through a toll-free telephone call or over the Internet at donotcall.gov.

48.     Under the TSR, "telemarketing" means, "a plan, program, or campaign which is conducted to induce the purchase of goods or services or a charitable contribution, by use of one or more telephones and which involves more than one interstate telephone call." 16 C.F.R. § 310.2(gg).

49.     Under the TSR, an "outbound telephone call" means a telephone call initiated by a telemarketer to induce the purchase of goods or services or to solicit a charitable contribution. 16 C.F.R. § 310.2(x).

50.     The TSR prohibits sellers and telemarketers from engaging in abusive telemarketing acts or practices by initiating an outbound telephone call to numbers on the Registry unless the seller or telemarketer can demonstrate that the seller (1) has obtained the

consumer's express agreement, in writing, to place such calls, or (2) has an established business relationship with that consumer. 16 C.F.R. § 310.4(b)(l)(iii)(B).

51.     Valid written consent to receive a live telemarketing call to a number on the Registry requires: (i) a writing signed by the consumer, (ii) clearly evidencing authorization to receive calls placed by or on behalf of a specific party, and (iii) stating the telephone number to which such calls may be placed. 16 C.F.R. § 310.4(b)(l)(iii)(B)(l).

52.     The TSR also prohibits sellers and telemarketers from engaging in abusive telemarketing acts or practices by initiating an outbound telephone call that delivers a prerecorded message, unless the seller has obtained the consumer's express agreement in writing to receive such calls. 16 C.F.R. § 310.4(b)(1)(v).

53.     Calls delivering prerecorded messages are commonly called "robocalls."

54.     An express agreement in writing to receive telephone calls delivering a prerecorded message must include: (1) a clear and conspicuous disclosure that the purpose of the agreement is to authorize the seller to place prerecorded calls to such person; (2) language that the seller did not require the agreement to be executed as a condition of purchasing a good or service; (3) language that the specific seller is authorizing to make such calls; and (4) the consumer's telephone number and signature. 16 C.F.R. § 310.4(b)(1)(v)(A)(i)-(iv).

55.     The Statement Basis and Purpose of the 2008 Amendments to the TSR ("Statement Basis and Purpose"), emphasized that request for consumer consent to receive calls delivering prerecorded messages shall not be hidden or buried in fine print:

> Some consumers express concern that sellers' requests for their
> agreement to receive prerecorded calls might be hidden in contest
> entry or other forms or on the back of credit card receipts. The
> Commission recognizes that these concerns are legitimate, based
> on its enforcement experience, and accordingly has incorporated in
> the amendment a requirement that a seller's request for a

14

> consumer's agreement to receive prerecorded calls be ''clearly and conspicuously'' disclosed, as two industry comments also recommend.  Legal precedent established by the Commission's long use of this term of art will ensure that consumers are not deceived or confused by hidden ''agreements'' buried in fine print. [citations omitted].

*See* Federal Register, Vol. 73, No. 169, Pg. 51182 (Aug. 2008).[1]

56.     The Statement Basis and Purpose goes on to state that a consumer's consent to receive calls delivering pre-recorded messages is non-transferable.

> …the Commission emphasizes that a consumer's agreement with a seller to receive calls delivering prerecorded messages is nontransferable. Any party other than that particular seller must negotiate its own agreement with the consumer to accept calls delivering prerecorded messages. Prerecorded calls placed to a consumer on the National Do Not Call Registry by some third party that does not have its own agreement with the consumer would violate the TSR. Thus, because information sharing cannot be a shortcut for the required written agreement to receive prerecorded calls, the Commission sees no need to impose a disclosure about information sharing. *Id.* at 51182.[2]

57.     Accordingly, under the TSR, a consumer's express agreement to accept calls delivering a prerecorded message may not be obtained by a lead generator, who is not a seller or a telemarketer.   The express agreement must be obtained directly by the seller or telemarketer from the consumer.

58.     The TSR further declares that "[i]t is a deceptive telemarketing act or practice and a violation of this Rule for a person to provide substantial assistance or support to any seller or telemarketer when that person knows or consciously avoids knowing that the seller or

---

[1] *See*, https://www.govinfo.gov/content/pkg/FR-2008-08-29/pdf/FR-2008-08-29.pdf
[2] *See also*, the FTC Guide "Complying with the Telemarketing Sales Rule," which states, "the TSR requires that the written agreement identify the single 'specific seller' authorized to deliver prerecorded messages.  The authorization does not extend to other sellers, such as affiliates, marketing partners or others." https://www.ftc.gov/business-guidance/resources/complying-telemarketing-sales-rule#writtenagreement.

telemarketer is engaged in any act or practice that violates §§ 310.3(a), (c) or (d), or § 310.4 of this Rule." 16 C.F.R. § 310.3(b).

## THE TELEMARKETER REGISTRATION ACT

59.     Section 2245(a)(9) of the TRA prohibits engaging in any deceptive or abusive telemarketing acts or practices in violation of the TSR. 73 P.S. § 2245(a)(9).

60.     A violation of the TRA is a violation of the Consumer Protection Law.  73 P.S. § 2246(a).

## COUNT I - VIOLATIONS OF THE TSR, TRA
## AND THE CONSUMER PROTECTION LAW

## ASSISTING AND FACILITATING
## THE DELIVERY OF TELEMARKETING CALLS TO CONSUMERS REGISTERED
## ON A DNC LIST WITHOUT THEIR VALID CONSENT

61.     The preceding paragraphs are incorporated herein as though fully set forth below.

62.     By obtaining and selling telemarketing leads to their Marketing Partners, as described herein, Defendants provided substantial assistance or support to sellers and telemarketers, engaged in telemarketing, as defined by TSR, 16 C.F.R.§ 310.2.

63.     As a result of Defendants' substantial assistance or support, Defendants' Marketing Partners initiated or caused the initiation of outbound telephone calls to Pennsylvania telephone numbers to induce the purchase of goods or services, even though said telephone numbers are on the National DNC Registry without the consumer's valid consent, in violation of Section 310.4(b)(1)(iii)(B) of the TSR.

64.     These illegal telemarking calls would not have been made by sellers and telemarketers to Pennsylvania consumers, but for Defendants' substantial assistance and support.

65.     Defendants knew or consciously avoided knowing that these sellers or telemarketers were engaged in acts and practices in violation of Section 310.4 of the TSR.

66.     Defendants' acts and practices constitute deceptive telemarketing acts or practices and violate the TSR. 16 C.F.R. § 310.3(b).

67.     A violation of the TSR constitutes a violation of the TRA and by extension a violation of the Consumer Protection Law. 73 P.S. § 2245(a)(9) and 73 P.S. § 2246(a).

68.     The aforesaid acts and practices further constitute unfair methods of competition and/or unfair or deceptive acts or practices as prohibited by Section 201-3 of the Consumer Protection Law, as defined by Section 201-2(4)(xxi) of said Law, by engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding, in violation of Section 201-2(4)(xxi). 73 P.S. § 201-3 & § 201-2(4) (xxi).

69.     The Commonwealth believes that the citizens of the Commonwealth are suffering and will continue to suffer harm unless the acts and practices complained of herein are permanently enjoined.

## PRAYER FOR RELIEF

**WHEREFORE**, the Commonwealth respectfully requests this Honorable Court to issue an Order:

A.      Declaring Defendants' conduct, as set forth in this Complaint, to be in violation of the Consumer Protection Law, the TRA and the TSR;

B.      Permanently enjoining Defendants and all other persons acting on their behalf, directly or indirectly, from violating the Consumer Protection Law, the TRA and the TSR and any amendments thereto;

C.      Directing Defendants, pursuant to Section 201-8(b) of the Consumer Protection Law, to pay civil penalties in the amount of one thousand and 00/100 dollars ($1,000.00) for each and every violation of the Consumer

Protection Law, which will increase to three thousand and 00/100 dollars ($3,000.00) for each violation involving a victim age sixty (60) or older;

D.    Requiring Defendants to pay the Commonwealth for the costs of its investigation and prosecution of this action;

E.    Directing Defendants to disgorge and forfeit all profits they have derived as a result of their unfair and deceptive acts and practices set forth in this Complaint;

F.    Permanently enjoining Defendants from selling, sharing or transferring consumer data, including a consumer's name and telephone number, for purposes of telemarketing, unless that the consumer data was obtained in full compliance with the TSR and TRA; and

G.    Granting such other relief as the Court deems necessary and appropriate.

## COUNT II – VIOLATIONS OF THE TSR, TRA AND THE CONSUMER PROTECTION LAW

### ASSISTING AND FACILITATING THE MAKING OF TELEMARKETING CALLS DELIVERING PRERECORDED MESSAGES/ROBOCALLS TO CONSUMERS WITHOUT THEIR VALID CONSENT

70.    The preceding paragraphs are incorporated herein as though fully set forth below.

71.    By obtaining and selling telemarketing leads to their Marketing Partners, as described herein, Defendants provided substantial assistance or support to sellers and telemarketers engaged in telemarketing, as defined by TSR, 16 C.F.R.§ 310.2, including the delivery of robocalls to Pennsylvania consumers.

72.    As a result of Defendants' substantial assistance or support, Defendants' Marketing Partners initiated or caused the initiation of outbound telephone calls that delivered pre-recorded messages to Pennsylvania telephone numbers to induce the purchase of goods or

18

services, without the consumers' valid consent or agreement, in violation of Section

310.4(b(1)(v) of the TSR.

73.     These illegal robocalls would not have been made by sellers and telemarketers to

Pennsylvania consumers, but for Defendants' substantial assistance or support.

74.     Defendants knew or consciously avoided knowing that these sellers or

telemarketers were engaged in acts and practices in violation of Section 310.4 of the TSR.

75.     Defendants' acts and practices constitute deceptive telemarketing acts or practices

and violate the TSR. 16 C.F.R. § 310.3(b).

76.     A violation of the TSR constitutes a violation of the TRA and by extension a

violation of the Consumer Protection Law. 73 P.S. § 2245(a)(9) and 73 P.S. § 2246(a).

77.     The aforesaid acts and practices further constitute unfair methods of competition

and/or unfair or deceptive acts or practices as prohibited by Section 201-3 of the Consumer

Protection Law, as defined by Section 201-2(4)(xxi) of said Law, by engaging in any other

fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding,

in violation of Section 201-2(4)(xxi). 73 P.S. § 201-3 and § 201-2(4) (xxi).

78.     The Commonwealth believes that the citizens of the Commonwealth are suffering

and will continue to suffer harm unless the acts and practices complained of herein are

permanently enjoined.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commonwealth respectfully requests this Honorable Court to issue

an Order:

> A.     Declaring Defendants' conduct, as set forth in this Complaint, to be in
> violation of the Consumer Protection Law, the TRA and the TSR;

B.      Permanently enjoining Defendants and all other persons acting on their behalf, directly or indirectly, from violating the Consumer Protection Law, the TRA and the TSR and any amendments thereto;

C.      Directing Defendants, pursuant to Section 201-8(b) of the Consumer Protection Law, to pay civil penalties in the amount of one thousand and 00/100 dollars ($1,000.00) for each and every violation of the Consumer Protection Law, which will increase to three thousand and 00/100 dollars ($3,000.00) for each violation involving a victim age sixty (60) or older;

D.      Requiring Defendants to pay the Commonwealth for the costs of its investigation and prosecution of this action;

E.      Directing Defendants to disgorge and forfeit all profits they have derived as a result of their unfair and deceptive acts and practices set forth in this Complaint;

F.      Permanently enjoining Defendants from selling, sharing or transferring consumer data, including a consumer's name and telephone number, for purposes of telemarketing, unless that the consumer data was obtained in full compliance with the TSR and TRA; and

G.      Granting such other relief as the Court deems necessary and appropriate.

## COUNT III – VIOLATIONS OF THE CONSUMER PROTECTION LAW DECEPTIVE BUSINESS PRACTICES

79.      The preceding paragraphs are incorporated herein as though fully set forth below.

80.      As described herein, Defendants use a broad range of deceptive tactics and methods, including but not limited to promises of free offers, gift cards to popular retailers, and elusive rewards, to lure consumers to provide their contact information for purposes of telemarketing.

81.      Defendants orchestrated pattern of deception and subterfuge constitutes unfair methods of competition and/or unfair or deceptive acts or practices as prohibited by Section 201-

3 of the Consumer Protection Law, as defined by Section 201-2 of said Law, including without

limitation:

    a.   Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services, 73 P.S. § 201-2(4)(ii);

    b.   Causing likelihood of confusion or of misunderstanding as to affiliation, connection or association with, or certification by, another, 73 P.S. § 201-2(4)(iii); and

    c.   Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding, 73 P.S. § 201-2(4)(xxi).

82.    The Commonwealth believes that the citizens of the Commonwealth are suffering

and will continue to suffer harm unless the acts and practices complained of herein are

permanently enjoined.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the Commonwealth respectfully requests this Honorable Court to issue

an Order:

    A.   Declaring Defendants' conduct, as set forth in this Complaint, to be in violation of the Consumer Protection Law.

    B.   Permanently enjoining Defendants and all other persons acting on their behalf, directly or indirectly, from violating the Consumer Protection Law.

    C.   Directing Defendants, pursuant to Section 201-8(b) of the Consumer Protection Law, to pay civil penalties in the amount of one thousand and 00/100 dollars ($1,000.00) for each and every violation of the Consumer Protection Law, which will increase to three thousand and 00/100 dollars ($3,000.00) for each violation involving a victim age sixty (60) or older;

    D.   Requiring Defendants to pay the Commonwealth for the costs of its investigation and prosecution of this action;

E.    Directing Defendants to disgorge and forfeit all profits they have derived as a result of their unfair and deceptive acts and practices set forth in this Complaint;

F.    Permanently enjoining Defendants from selling, sharing or transferring consumer data, including a consumer's name and telephone number, for purposes of telemarketing, which was obtained in connection with Defendants' deceptive conduct; and

G.    Granting such other relief as the Court deems necessary and appropriate.


Respectfully submitted,

COMMONWEALTH OF PENNSYLVANIA
OFFICE OF ATTORNEY GENERAL

JOSH SHAPIRO
ATTORNEY GENERAL

Date: November 2, 2022          By:    /s/ Amy L. Schulman
                                       Amy L. Schulman
                                       Senior Deputy Attorney General
                                       PA ID No. 88088
                                       Attorney for the Commonwealth
                                       Office of Attorney General
                                       1251 Waterfront Place, Mezzanine Level
                                       Pittsburgh, Pennsylvania 15222
                                       Phone:  412-565-3523
                                       Email:  aschulman@attorneygeneral.gov

                                       Kevin R. Green
                                       Deputy Attorney General
                                       PA ID No. 321643
                                       Attorney for the Commonwealth
                                       Office of Attorney General
                                       1251 Waterfront Place, Mezzanine Level
                                       Pittsburgh, Pennsylvania 15222
                                       Phone: 412-235-9078
                                       Email: kgreen@attorneygeneral.gov